IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CODY SHEAROUSE, )
)
Plaintiff, )
)
v. ) CASE NO. CV417-107
)
REMINGTON ARMS COMPANY, LLC, )
)
Defendant. )
_____ )

# ORDER

Before the Court is Defendant's Motion to Exclude the Testimony and Causation Opinion of Plaintiff's Liability Expert and Incorporated Motion for Summary Judgment. (Doc. 32.) For the following reasons, Defendant's motion (Doc. 32) is **DENIED**.

## BACKGROUND

This case involves an alleged product defect in Defendant's Remington Model 770 rifle. (Doc. 1.) Plaintiff, at the time of the incident, was twenty years old and had been hunting with his father from a young age. (Doc. 38 at ¶ 13; Doc. 45 at ¶ 13.) On July 26, 2015, Plaintiff planned to shoot a turtle that had been eating the fish in a pond behind his house and went to retrieve his Remington Model 770 (the "Shearouse gun") from the gun case. (Doc. 38 at ¶ 14-15; Doc. 45 at ¶ 14-15.) Plaintiff claims that he loaded the magazine, put the magazine in the gun, walked to the back porch, closed the bolt to chamber a round and then the

rifle discharged without Plaintiff pulling the trigger. (Doc. 38 at ¶ 15; Doc. 45 at ¶ 15.)[1] The bullet from the Shearouse gun fired through Plaintiff's right foot. (Doc. 38 at ¶ 16; Doc. 45 at ¶ 16.) Plaintiff seeks recovery in this products liability action under theories of strict liability, negligence, and a breach of the duty to warn. (Doc. 1.) Plaintiff pursues theories of manufacturing defect, design defect, and breach of the duty to warn. (Id.)

Both parties have retained experts to testify. Plaintiff has retained Jack Belk as a liability expert. (Doc. 38 at ¶ 20.) Plaintiff and Plaintiff's liability expert, Jack Belk, believe that the rifle was defectively manufactured and designed. (Doc. 38 at ¶ 20; Doc. 45 at ¶ 20.) Specifically, they contend that the Shearouse gun contained a manufacturing defect in that the trigger spring was misaligned which "resulted in the adjoining parts interfering with the spring." (Doc. 38 at ¶ 22.) The misaligned trigger spring "created a situation where interference would ultimately cause the trigger spring to fail to fully push the trigger into a safe engagement after firing,

---

[1] Defendant objects to Plaintiff's factual assertion that he did not pull the trigger because Plaintiff allegedly admitted to an officer on the day of the injury that he did pull the trigger to see if the safety was on. (Doc. 45 at ¶ 13.) However, for purposes of evaluating a motion for summary judgment, this Court does not weigh the evidence and must take the non-movants facts as true. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

causing the rifle to fire without the trigger being pulled." (Id.) Plaintiff and Belk also contend that the Shearouse gun contained two design defects. The first design defect is the "absence of a recess or lug to hold the trigger return spring in place and prevent it from becoming misaligned and interfering with the surrounding parts." (Id. at ¶ 23.) The second design defect is "the use of a square nosed trigger pull screw instead of a round or domed trigger pull screw, which would reduce friction and the risk of interference with the spring on the edge of a square nosed pull screw." (Id. at ¶ 24.) Belk concluded that these defects "resulted in an unsafe engagement which caused the rifle to fire on bolt closure without the trigger being pulled." (Id. at ¶ 25.)

Defendant, of course, rejects these contentions and moves to exclude Belk's opinion as to causation. Specifically, Defendant contends that Belk's opinion that the misalignment of the trigger spring in the rifle's trigger mechanism caused the sear and the trigger to disengage which led to a fire on bolt closure is inadmissible under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). (Doc. 35 at 12-17.) Defendant asserts that Belk's opinions are inadmissible because "Belk has no reliable basis, let alone supportive scientific testing, to validate his hypothesis that, at the moment of Plaintiff's shooting, the rifle fired without a trigger pull due

3

to any defect in the trigger mechanism, rather than" simply firing when the trigger was pulled. (Doc. 35 at 1.) Defendant contends that Belk's causation theory about the misaligned trigger spring is not reliable because his theory is not supported by physical evidence and testing. (Id. at 12.)

Plaintiff objects to the exclusion of Belk's causation opinion and contends that Belk's expert testimony falls into the "technical" or "other specialized knowledge" categories of expert testimony permitted under Federal Rule of Evidence 702. (Doc. 37 at 12.) Plaintiff argues that Belk's opinion does rely on testing, namely the x-ray film of the internal parts of the Shearouse gun, and that the films clearly show that the trigger return spring is misaligned. (Id.) Plaintiff contends that Belk came to his opinion by his experience and knowledge as a gunsmith in that he can mechanically examine the rifle, examine the films showing the location of internal parts and determine if any parts are out of place, and then predict how the trigger will perform. (Id. at 14.)

In conjunction with its motion to exclude the testimony of Belk, Defendant argues that, without admissible expert opinion testimony on the element of causation, Plaintiff lacks sufficient proof to take his case to trial and that Defendant is entitled to summary judgment in its favor. (Doc. 35 at 17.) Plaintiff opposes summary judgment and argues that Belk's

4

opinion is admissible under Daubert. (Doc. 37 at 17.) Plaintiff also argues that, even if Belk's testimony is excluded, summary judgment is not proper because Defendant's expert admitted that the Shearouse gun would only fire because the trigger was pulled or because of a defect. (Id.) Thus, as Plaintiff has testified in his deposition that he did not pull the trigger, the "determination of whether or not Plaintiff pulled the trigger is a fact question that must be decided by a jury." (Id. at 17-18.)

**STANDARD OF REVIEW**

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548,

5

2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586, 106 S. Ct. at 1356. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts,

and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

**ANALYSIS**

I. <u>DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S LIABILITY EXPERT</u>

The admission of expert testimony is controlled by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"As the Supreme Court made abundantly clear in Daubert, Rule 702 compels district courts to perform the critical gatekeeping function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation omitted). This gatekeeping function equally applies to the admissibility of expert technical evidence. Id.; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49, 119 S. Ct. 1167, 1174-75, 143 L. Ed. 2d 238 (1999).

7

The Eleventh Circuit Court of Appeals has explained that district courts fulfill that function by engaging in a three-part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific . . . expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260. Here, Defendant raises an issue concerning the second prong: whether Belk's causation opinion is sufficiently reliable under Daubert.

When a court considers the reliability of a particular expert's opinion, it considers, to the extent possible, (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003)(citing McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). These factors "do not constitute a 'definitive checklist or test.' " Kumho Tire, 526 U.S. at 150 (quoting Daubert, 509 U.S. at 593). Rather, the applicability of these factors "depends upon the particular circumstances of

8

the particular case at issue." Id. The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony. Frazier, 387 F.3d at 1262.

A. Belk's Causation Opinion

The Remington Model 770 bolt action rifle contains an override trigger. (Doc. 37 at 3.) This kind of trigger is designed for the sear to rest on top of the trigger. (Id.) The overlap between the sear and the trigger is referred to as the engagement. (Id.) When the trigger is pulled with the requisite force, the force disengages the trigger from under the sear, which allows the firing pin head to override the sear. (Doc. 35 at 5.) The trigger return spring slides onto the trigger pull screw and is intended to rest flush on the face of the trigger. (Doc. 37 at 3.) After the rifle is fired, the trigger return spring pushes the trigger back under the sear, resetting the engagement. (Id.) An engagement of .031 inches is considered a safe engagement for the Remington Model 770 and an unsafe engagement is anything less than .005 inches. (Id. at 4.)

In this case, Belk contends that the Shearouse gun contained a manufacturing defect in that the trigger spring was misaligned which "resulted in the adjoining parts interfering with the spring." (Doc. 38 at ¶ 22.) The misaligned trigger spring "created a situation where interference would ultimately

9

cause the trigger spring to fail to fully push the trigger into a safe engagement after firing, causing the rifle to fire without the trigger being pulled." (Id.) In coming to this opinion, Belk physically inspected the rifle at North Star Images and reviewed X-ray films taken of the Shearouse gun which depicted a misaligned trigger spring. (Doc. 50, Attach. 1.) Belk testified that in his fifty years of experience, he had "never seen a trigger this bad." (Doc. 37, Attach. 5 at 21.)

Plaintiff and Belk also contend that the Shearouse gun contained two design defects. The first design defect is the "absence of a recess or lug to hold the trigger return spring in place and prevent it from becoming misaligned and interfering with the surrounding parts." (Id. at ¶ 23.) The second design defect is "the use of a square nosed trigger pull screw instead of a round or domed trigger pull screw, which would reduce friction and the risk of interference with the spring on the edge of a square nosed pull screw." (Id. at ¶ 24.) Belk concluded that these defects "resulted in an unsafe engagement which caused the rifle to fire on bolt closure without the trigger being pulled." (Id. at ¶ 25.)

Defendant only challenges the causation opinion of Belk that a misaligned trigger spring in the Shearouse gun caused the rifle to fire without a trigger pull. (Doc. 35 at 11-17.) Specifically, Defendant contends that Belk's "opinion that such

10

a defect caused this shooting does not "fit" the facts of the case, and is not based on any reliable scientific method or testing." (Id. at 11.) Defendant also argues that the opinion should be excluded because Belk cannot exclude the other plausible explanation for the shooting—namely, pulling the trigger while the safety was in the "OFF" or "FIRE" position. (Id.) Thus, Defendant does not appear to challenge Belk's design or manufacturing defect opinion but solely challenges the opinion that the manufacturing defect caused the injury to Plaintiff.

1. Defendant's contention that the defect does not "fit" the case and is not based on reliable scientific method

Defendant urges this Court to find that Belk's opinion is unreliable speculation. Defendant points to the testing on the Shearouse gun by Belk and Remington's expert, Derek Watkins, after the accident to show that the Shearouse gun only operates as intended: firing when the trigger is pulled. (Doc. 35 at 12.) Defendant contends that Belk's causation opinion is not based on reliable scientific testing and methods because Belk admits that he did not observe an unsafe engagement on the Shearouse gun during the joint inspection and because no test resulted in a replication of Belk's hypothesized fire-on-bolt-closure. (Id.) The Court disagrees and finds that Belk bases his testimony on more than pure speculation.

First, the Court notes that both Belk and Watkins rely on the physical examination and testing performed at the joint inspection of the Shearouse gun. (Compare Doc. 35, Attach. 1 (reviewing the digital data received from North Star Imaging of the Shearouse gun in Belk's expert report) with Doc. 35, Attach. 4 at 2 (stating in Watkins' expert report that the rifle was examined "via a CT scan, 2D radiography, optical measurements, actuation force measurements and physical testing.").) In addition, Belk has done a significant amount of testing and examining of firearms and override triggers. (Doc. 50, Attach. 3 at 17-18; 115-117.) When Belk was asked whether he had tested his general hypothesis that "the interference with the trigger return spring can result in a reduced trigger sear engagement causing the rifle to fire by merely closing the bolt," Belk responded that he had "many, many times." (Id. at 104.) Belk explained his methodology as "I can look at it mechanically, look at the parts and knowing through experience and education how those parts interact, I can make certain deductions of how that trigger is going to work and how it's is [sic] going to fail." (Doc. 50, Attach. 4 at 240-41.) The Court notes that Belk's qualifications, education, and experience have not been challenged. Thus, although the tests performed on the Shearouse gun at the joint inspection did not result in a fire on bolt closure or a demonstration of precipitous engagement, Belk has

12

experience in the mechanical nature of override triggers. He can explain how those triggers function and can explain how the manufacturing defect he identified could lead to these occurrences.

Ultimately, while there is no affirmative evidence through testing of a fire on bolt closure, such a fact does not per se render the opinion that the rifle fired without a trigger pull due to a manufacturing defect unreliable. See Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 990 (11th Cir. 2016). The fact that these attempts did not result in the Shearouse gun discharging without a trigger pull goes to the weight of the evidence, not the admissibility. Defendant may address these inconsistencies through vigorous cross-examination and presentation of contrary evidence. Daubert, 509 U.S. at 596, 113 S. Ct. at 2798.

Finally, the Court briefly discusses Bachert v. Remington Arms Co., LLC, No. 4:15-cv-03220, 2017 WL 4512555 (S.D. Tex. Aug. 4, 2017). Defendant contends that Bachert is "on all fours" with the present case as the rifle there was tested by experts and cannot be made to malfunction and fire without a trigger pull as claimed by the plaintiff. (Doc. 44 at 11.) In a sparse opinion, the district court found that the plaintiff was unable to demonstrate that a product defect caused the rifle to fire and stated that

13

> Bachert told the officer that the safety was on when the gun fired. Tests of the rifle after the accident showed that the trigger could not be pulled when the safety was on. The argument that the excess bonding agent caused a defect in the gun is not supported by the record.

Bachert, 2017 WL 4512555, at *1. Notably, the district court when on to state that

> Bachert's complaint and deposition from the case in Illinois say that the rifle's safety was on at the time of the accident. More than two years after the accident and in response to Remington's motion for judgment, Bachert submitted a new affidavit directly contradicting his deposition testimony; he now claims that the safety was off.

Id. at *2. Thus, the plaintiff in Bachert originally claimed that the rifle was defective because it fired with the safety on. However, after tests showed that the gun could not be made to fire with the safety on, the plaintiff submitted a new affidavit directly contradicting his deposition testimony and contending that excess bonding agent caused the gun to fire without a trigger pull when the safety was off. Id. The Court stated that it was the plaintiff's responsibility to provide "evidence from which a jury could reasonably determine the gun was defective" and rejected the plaintiff's subsequent affidavits as an attempt to manufacture a genuine issue of fact to preclude summary judgment. Id.

The Court finds that Bachert is not "on all fours" with this case as Defendant contends. Unlike this action, where Plaintiff has maintained that he did not pull the trigger, the plaintiff in Bachert attempted to manufacture a genuine issue of fact to preclude summary judgment by submitting affidavits that materially changed his story of the shooting. That issue is not present in this case. Further, there is other evidence in this case from which a jury could reasonably determine that the Shearouse gun was defective.

2. Belk's treatment of alternative causes

Defendant contends that Belk's opinion is also unreliable because Belk did not offer any "scientifically valid method to rule-out that the rifle functioned precisely as intended on the day of Plaintiff's shooting." (Doc. 35 at 16.) Defendant argues that Belk's opinion must be excluded on this ground. The Court disagrees.

First, the Court again notes that Defendant is not challenging Belk's opinion that the Shearouse gun contains a manufacturing defect or his opinions regarding the design defects. Defendant's own expert, Derek Watkins, testified in his deposition that there are only four possible explanations of why a Remington Model 770 would fire. These explanations are: the trigger was pulled, there was an improper post-sale alteration to the rifle, there was an improper post-sale abuse of the

15

rifle, or that there was a defect in the rifle. (Doc. 37, Attach. 2 at 13-15.) Watkins further testified that he did not observe any evidence that there was an improper post-sale alteration, post-sale abuse, or debris that would have caused the Shearouse gun to fire without a trigger pull. (Doc. 39, Attach. 1 at 37.) Watkins ultimately stated that

> I would say that if it [the Shearouse gun] did fire without the trigger being pulled and if it was being handled in a normal and expected way, that there was some defect possibly causing it, as long as we're not talking out debris or poor maintenance or other things getting in there causing an issue that type of stuff.

(Id.) Therefore, the two possible reasons for Plaintiff's injuries are that he pulled the trigger and the Shearouse gun operated as intended or that he did not pull the trigger and a defect caused the rifle to fire. Plaintiff contends that he did not pull the trigger. (Doc. 50, Attach. 2 at 90.) Defendant cites to the deposition of Timothy Ivey, an officer who responded to scene when Plaintiff was shot, that Plaintiff told Sergeant Ivey that he had the barrel of the Shearouse gun on top of his foot and pulled the trigger. (Doc. 35 at 15.) Sergeant Ivey did testify that Plaintiff told him that the gun fired when he pulled the trigger. (Doc. 50, Attach. 1 at 19.) However, as stated, Plaintiff has sworn testimony that he did not pull the trigger. Thus, causation of Plaintiff's injury, e.g. whether

16

Plaintiff pulled the trigger, is a question of fact to be resolved by the jury and not by this Court on summary judgment. Ontario Sewing Mach. Co. v. Smith, 275 Ga. 683, 687, 572 S.E.2d 533, 536 (2002) ("[I]t is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases.") (internal quotation marks and citation omitted). Further, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence . . . Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Quiet Tech., 326 F.3d at 1341 (quoting Daubert, 509 U.S. at 596, 113 S. Ct. at 2798).

II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In conjunction with its motion to exclude the testimony of Belk, Defendant argues that, without admissible expert opinion testimony on the element of causation, Plaintiff lacks sufficient proof to take his case to trial and that Defendant is entitled to summary judgment in its favor. (Doc. 35 at 17.) Because the Court denied Defendant's motion to exclude, the Court denies Defendant's motion for summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Exclude the Testimony and Causation Opinion of Plaintiff's Liability Expert and Incorporated Motion for Summary Judgment (Doc. 32).

SO ORDERED this 11th day of October 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA